UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMES HENRY GREEN,

Petitioner,

v.

RENEE BAKER, *et al.*,

Respondents.

Case No. 3:11-cv-00230-MMD-CBC

ORDER

This *pro se* habeas petition comes before the Court for consideration of the merits of the remaining claims in the petition (ECF No. 8).[1] Respondents have answered the petition (ECF No. 75), and Petitioner James Green ("Green") has replied (ECF No. 81).

**I. BACKGROUND**

Green challenges his state court conviction for attempted murder with use of a deadly weapon. (ECF No. 8 at 2; Ex. 8.)[2] Green was charged with that crime, along with battery with use of a deadly weapon resulting in substantial bodily harm, and mayhem with use of a deadly weapon, for cutting and/or stabbing Kevin Tippens on his face and neck on September 10, 2007. (Ex. 1.)

An information charging Green with crimes related to the stabbing was filed on December 14, 2007. (Ex. 1.) On November 15, 2007, the Justice Court entered an order of commitment for Green to appear before the Eighth Judicial District Court for a finding of competency. (Ex. 19.) The order assigned the case to Department 15 for that purpose.

---

[1]The Court previously dismissed Grounds 1(c), 5(a), 5(b) and 5(d) as procedurally defaulted and Grounds 1(a), 1(b), 2(a), 2(c), 4(c) and 5(e) for failing to state a claim. (ECF Nos. 28 & 71.)

[2]The exhibits cited in this order, comprising the relevant state court record, are located at ECF Nos. 17, 56 and 76.

1

(*Id.*) The district court found that Green was competent to stand trial (Ex. 20), and the preliminary hearing thereafter took place before the Hon. Melissa Saragosa in the Justice Court. (Ex. 21).

Before trial, the State filed a motion in limine to admit evidence of other incidents in which Green had used a box cutter to attack other people on or about their heads and necks. (Ex. 26.) Green's counsel vigorously opposed the motion. (Ex. 27, Ex. 3 (Tr. 63-67, 70-71).) After a *Petrocelli* hearing, the trial court granted the motion in limine and allowed introduction of the other bad acts to show lack of mistake and identity. (Ex. 3 (Tr. 71-73).)

Trial commenced on May 20, 2008. (Ex. 28.) Tippens testified that the incident occurred the night he had been released from a six-prison year sentence for robbery. (Ex. 28 (Tr. 27-28).). Tippens stated that upon his release, he met up with a man named Paul, and together they met two female sex workers who took Tippens and Paul to a room at the Alicia Inn. (*Id.* at 32-33, 62-63.) Green showed up at the room sometime after they arrived, and Tippens twice gave Green some money to go get drinks and drugs. (*Id.* at 37-42.) After the second time, Green went into the bathroom with the two women and then came back out and asked Tippens for more money. (*Id.* at 43-44.) When Tippens said no, Green "threw a fit" and then walked toward Tippens and swung at him. (*Id.* at 44-45.) A fight ensued that carried out into the hallway. (*Id.* at 46-47.) The fight continued until Green was knocked out. (*Id.* at 49-50.) Paul then noticed that Tippens was cut. (*Id.* at 50).)

Green testified on his own behalf. He stated that he had been renting and living in the room at the Alicia Inn for about a week. (Ex. 4 (Tr. 142).) Buttercup, a sex worker who had been paying to use Green's room for her business, brought Tippens and Paul to Green's room for work. (*Id.* at 144-45.) Green testified that Buttercup was the only woman there that night; there was no second woman. (*Id.* at 148.) Green left to grab some drinks, and Tippens asked if Green could also pick up some drugs. (*Id.* at 149.) Tippens did not

like the drugs Green returned with, and although Buttercup was finishing up, Tippens picked her up and carried her back toward Green's bedroom. (*Id.* at 150-52.) At that, Green said, "It's time to end the party." (*Id.* at 153.) As everyone was leaving and Green was shutting the door, Tippens reached into Green's pocket, where Green had his money. (*Id.* at 153-56.) A fight ensued. (*Id.* at 156.) Because Tippens had a broken crack pipe, which could be used as a weapon, Green pulled out a knife. (*Id.* at 158, 169.) Paul joined in the fray, and Green cut them both out of fear for his life. (*Id.* at 158-59.)

Finally, five witnesses testified as to three other incidents in which Green stabbed or slashed at the faces and heads of others during an altercation. (Ex. 28 (Tr. 86, 91-93); Ex. 4 (Tr. 55-59, 63-68, 93-103, 110-17).)

The jury ultimately found Green guilty of attempted murder with use of a deadly weapon and mayhem with use of a deadly weapon. (Ex. 6.) Green's conviction was affirmed on appeal and in state postconviction proceedings. (Ex. 12, 18 & 33.) Green's federal habeas petition is now before the Court for consideration of the surviving claims on the merits.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas

review. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> ... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181.

The state courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, -- U.S. --, 135 S. Ct. 2187, 2208 (2015).

**III. DISCUSSION**

### A. Ground 2(b)

In Ground 2(b), Green contends appellate counsel was ineffective for failing to assert arguments Green wanted raised on appeal. The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that appellate counsel was ineffective for "failing to file appellant's material issues on appeal" . . . Appellant failed to demonstrate that appellate counsel was deficient. Appellant failed to allege what claims should have been raised on appeal that were not. . . . Therefore, the district court did not err in denying this claim.

(Ex. 33 at 5.) This decision was not objectively unreasonable.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. *See id.* at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696.

Green failed in state court to identify what claims should have been raised on appeal. As such, it was not objectively unreasonable for the state courts to reject his claim as conclusory. In his federal petition, Green identifies only one argument counsel should have raised on appeal—the jury instructions were unconstitutional because "deliberate intent to kill" is not consistent with "absence of malice." (ECF No. 8 at 5.)

What Green means by this requires some discussion. Respondents interpret the claim as alleging—inartfully—a sufficiency of the evidence claim. That is, Respondents believe Green to be asserting that no evidence of malice was presented at trial, *i.e.*, there was an "absence of malice." The Court does not understand this to be Green's claim. Green is alleging that the jury instructions were unconstitutional because "absence of malice" is inconsistent with deliberate intent to kill. The Court thus looks to the jury instructions. Instruction No. 4 defined attempted murder as "the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with *express malice*, namely, with the *deliberate intention unlawfully to kill*." (Ex. 29 at 6 (emphasis added).).[3] The phrase "absence of malice" is not used in Instruction No. 4 or anywhere

---

[3]The citation is to the CM/ECF generated number at the top of the page.

else in the instructions. (*See* Ex. 29.) In his reply, Green asserts that the instructions "orally given . . . deviated from the ones proposed." (*See* ECF No. 81 at 3.) It thus appears to the Court that Green most likely is arguing that the trial court used the phrase "absence of malice" when orally instructing the jury, perhaps inadvertently in lieu of the phrase "express malice" contained in the written instructions.

If this is Green's claim, it is completely unsupported. Nothing in the record indicates that the trial court ever used the phrase "absence of malice" in instructing the jury. The jury instruction defining attempted murder otherwise has not been shown to be unconstitutional or improper. Green has therefore failed to show that appellate counsel rendered deficient performance by not raising this claim on appeal. Furthermore, the Nevada Supreme Court found Instruction No. 4, as written, to be constitutional. (Ex. 33 at 2-3.) Thus, even if counsel had objected to the instruction, Green cannot show that he would have obtained relief. Green has not shown prejudice from the failure.

Green is not entitled to relief on Ground 2(b).

**B. Ground 2(d)**

In Ground 2(d), Green alleges that counsel was ineffective for failing to argue in opening statement or closing argument that Green was being robbed and acted in self-defense. Green appears to argue that counsel was ineffective for failing to point out specific evidence supporting the self-defense claim: (1) pictures that showed currency on the floor in the doorway of the room; (2) the fact that Green was injured; and (3) the fact that Paul was injured and was involved in the fight.[4] (ECF No. 8 at 5.) The Nevada Supreme Court addressed this claim, in part, as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to convey that the motel room was appellant's residence, that appellant was injured during the incident, and that the victim gave different statements to the detectives regarding what happened. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced because trial counsel presented all

---

[4]Green also asserts an "unreasonable failure to investigate," but that claim is duplicative of Ground 4(a), in part, and will not be further discussed here.

of this evidence at trial. Therefore, the district court did not err in denying these claims.

(Ex. 33 at 4.) The Nevada Supreme Court's decision was not objectively unreasonable.

The injury Green appears to be referring to is the cut he received during the altercation. (*See* Ex. 4 (Tr. 164-65).) Although counsel did not mention this or the currency in arguments, in closing he repeatedly asserted that Green was acting in self-defense and that Tippens had been trying to rob him; he additionally alleged that Green was knocked out during the altercation and that Paul was involved and stabbed by Green, as well. (Ex. 28 (Tr. 25); Ex. 4 (Tr. 202-03, 206-07).) As Respondents persuasively point out, it was reasonable for counsel not to argue self-defense or robbery in his opening statement, before the presentation of the evidence, as the only evidence supporting either of these claims was Green's testimony and it was possible that Green, as the defendant, would elect not to testify. The failure to mention the currency or Green's injury in closing did not fall below the wide range of reasonable representation, as neither fact was particularly compelling, and that evidence was otherwise presented at trial. (*See* Ex. 4 (Tr. 155, 164-65).) For the same reason, counsel's failure to mention these specific alleged facts cannot be said to have caused Green prejudice, as there is no reasonable likelihood that the outcome of trial would have been different had he done so. Accordingly, as Green fails to establish an ineffective assistance of counsel claim on these grounds, the Nevada Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court law.

Green is not entitled to relief on Ground 2(d).

**C. Ground 3(a)**

In Ground 3(a), Green asserts that the trial court violated his rights to due process and a fair trial by failing to instruct the jury as to the burden of proof—specifically, that the State was required to prove beyond a reasonable doubt that Green was not acting in self-

8

defense. (ECF No. 8 at 7.) This claim is plainly belied by the record, as the trial court clearly instructed the jury of the State's burden in this respect. (*See* Ex. 29 at 15, 20.)[5]

Green is not entitled to relief on Ground 3(a).

**D. Ground 3(b)**

In Ground 3(b), petitioner asserts that his rights to due process and a fair trial were violated when the trial court gave inaccurate instructions as to deliberate intent to kill, which is inconsistent with absence of malice. (ECF No. 8 at 7.)

To obtain federal habeas relief based on an improper jury instruction, petitioner must establish that the instruction so infected the entire trial that the resulting conviction violates due process. *See Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir.1993); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The question is whether the instructional "error, in the whole context of the particular case, had a substantial and injurious effect on the jury's verdict." *Calderon v. Coleman*, 525 US. 141, 147 (1998). In reviewing jury instructions, the court inquires as to whether the instructions as a whole were misleading or inadequate to guide the jury's deliberation. *See United States v. Garcia–Rivera*, 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega*, 179 F.3d 793, 806 n. 16 (9th Cir.1999)) (internal citations omitted). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378 (1990). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

As discussed above, there is no evidence that the court instructed the jury as to "absence of malice." Instruction No. 4, defining attempted murder, is not otherwise constitutionally infirm. Green fails to establish any due process violation on the basis of the attempted murder instruction.

Green is not entitled to relief under Ground 3(b).

---

[5] The citation is to the CM/ECF generated number at the top of the page.

### E. Ground 3(c)

In Ground 3(c), Green asserts that his case was "arbitrarily and capriciously" placed in Department 15—the district court—before his initial appearance. (ECF No. 8 at 7.) The record reflects that Green's case was assigned to Department 15 before his preliminary hearing for purposes of a competency evaluation. (Ex. 19.) Green has not shown that this action was arbitrary and capricious, as opposed to standard procedure where competency is an issue, nor has he shown that the temporary assignment to district court before the preliminary hearing in order to evaluate his competency rendered his trial fundamentally unfair.

Green is not entitled to relief on Ground 3(c).

### F. Ground 3(d)

In Ground 3(d), Green asserts that Department 15 issued a defective order of commitment without probable cause, before Green had made an initial appearance. He asserts that the delay caused by the defective order was intended to buy more time in order to gather additional information to justify Green's arrest or add charges. (ECF No. 8 at 7, 15-16.)

To the extent Green asserts his detention prior to his initial appearance violated his constitutional rights, habeas relief is not available on this ground. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.") To the extent Green asserts that the additional time was used to gather evidence to support probable cause, he does not identify what evidence was obtained during this time period, even assuming that the use of any such evidence would violate a constitutional right.

Green is not entitled to relief on Ground 3(d).

///

### G. Ground 3(e)[6]

In Ground 3(e), Green asserts that counsel was ineffective for failing to investigate (ECF No. 8 at 7.) The Nevada Supreme Court rejected the claim as follows:

> [A]ppellant claimed that trial counsel was ineffective because he failed to do any pretrial investigation. . . . To the extent that appellant raised a general claim that trial counsel failed to investigate, appellant failed to allege specific facts that, if true, entitled him to relief. Hargrove v. State, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). Therefore, the district court did not err in denying this claim.

(Ex. 33 at 2.) This conclusion was not objectively unreasonable. Green has failed to allege in Ground 3(e) what evidence counsel should have uncovered through investigation.[7] He has not therefore established either deficient performance or prejudice.

Green is not entitled to relief on Ground 3(e).

### H. Ground 3(f)

In Ground 3(f), Green asserts that counsel was ineffective for failing to object to unconstitutional jury instructions. (ECF No. 8 at 7.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to object to unconstitutional jury instructions. To the extent that appellant appeared to claim that trial counsel was ineffective for failing to object to the jury instructions regarding self-defense and malice, appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced because he failed to demonstrate that these jury instructions were unconstitutional or that had trial counsel objected there was a reasonable probability of a different outcome at trial. Therefore, the district court did not err in denying this claim.

(Ex. 33 at 2-3.) This determination was not objectively unreasonable.

To the extent Green asserts counsel should have objected to the "malice" instruction, Green has not established that the trial court used the phrase "absence of malice" and has not otherwise established that the written instruction defining express

---

[6]The Court's numbering of the remaining claims in Ground 3 differs from that provided by Respondents.

[7]Green does make more specific allegations in Grounds 4(a)(1) and 4(a)(2), which are discussed *infra*.

malice was unconstitutional. Further, as discussed, the trial court properly instructed as to the State's burden regarding the self-defense defense. Thus, it was not unreasonable for counsel to fail to object to these instructions. As Green has established neither deficient performance nor prejudice, his ineffective assistance of counsel claim based on the failure to object to unconstitutional jury instructions must fail. The Nevada Supreme Court's rejection of this claim was therefore neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.

Green is not entitled to relief on Ground 3(f).

**I. Ground 3(g)**

In Ground 3(g), Green asserts that counsel was ineffective for failing to object to District Court Judge Bell presiding over the motion in limine hearing when counsel knew Judge Bell was biased and had a "fixed opinion in re merits." (ECF No. 8 at 7.) First, the record reflects that Judge Loehrer, not Judge Bell, presided over the motion in limine hearing. (*See* Ex. 3.) Second, Green has not established either that Judge Loehrer had a fixed opinion or bias or that his counsel should have known of this bias and objected, nor does the record support either assertion. Green has thus failed to establish either deficient performance or prejudice, and the state courts were not objectively unreasonable in rejecting this claim.

Green is not entitled to relief on Ground 3(g).

**J. Ground 4(a)**

In Ground 4(a), Green asserts that counsel did not investigate Green's claim that he was being robbed and was defending himself at his residence. (ECF No. 8 at 9.) Specifically, Green asserts that counsel failed to call an alibi witness, Brian Cornutte, who was the manager of the Alicia Inn. Cornutte would have testified that Green was a registered occupant of the room and Tippens was not, which Green asserts would have impeached Tippens.

The Nevada Supreme Court rejected this claim as follows:

12

> [A]ppellant claimed that trial counsel was ineffective because he failed to do any pretrial investigation. Specifically, appellant claimed that trial counsel should have interviewed the manager of the motel in order to bolster his self-defense claim. Appellant failed to demonstrate that he was prejudiced because he failed to show a reasonable probability of a different outcome at trial had this evidence been presented. Evidence was presented at trial that appellant was the person to whom the motel room was rented. To the extent that appellant raised a general claim that trial counsel failed to investigate, appellant failed to allege specific facts that, if true, entitled him to relief. Hargrove v. State, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). Therefore, the district court did not err in denying this claim.

(Ex. 33 at 2.) This decision was not objectively unreasonable.

It was not deficient for counsel to fail to call Cornutte to testify that Green resided in the Alicia Inn room because that evidence was introduced at trial through another source. (Ex. 4 (Tr. 19).) No evidence was admitted that Tippens was the lawful occupant of the room. Green does not identify what other evidence would have supported his claim of self-defense that counsel should have discovered.

Green has not shown that counsel's performance was deficient with respect to the investigation of his self-defense defense or that his counsel's conduct caused him prejudice. The state courts were not objectively unreasonable in rejecting this claim.

Green is not entitled to relief on Ground 4(a)(1).

**K. Ground 4(a)(2)**

In Ground 4(a)(2), Green asserts that counsel failed to interview the detectives who came into contact with Tippens about his conflicting accounts and behavior. (ECF No. 8 at 9.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to call the detectives in order to impeach the victim's statements. Appellant failed to demonstrate that trial counsel was deficient. The detectives testified at trial and the victim was impeached with his prior statements. Therefore, the district court did not err in denying this claim.

(Ex. 33 at 4-5.) This conclusion was not objectively unreasonable.

Counsel cross-examined Tippens about his varying accounts. (Ex. 28 (Tr. 71-81).) Green has not established a reasonable likelihood that the outcome of trial would have

13

been different with additional investigation or testimony. The state courts were not therefore objectively unreasonable in rejecting this claim.

Green is not entitled to relief on Ground 4(a)(2).

**L. Ground 4(b)**

In Ground 4(b), Green asserts that appellate counsel failed to raise Green's claim of improper jury instructions on appeal. (ECF No. 8 at 9.) This claim is duplicative of Ground 2(b) and is denied on the same basis.

**M. Ground 4(d)**

In Ground 4(d), Green asserts that counsel failed to properly cross-examine Kevin Tippens, who was on parole for robbery, by asking him about robbing Green.[8] (ECF No. 8 at 9.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to cross-examine the victim. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced because trial counsel did cross-examine the victim. Further, appellant failed to allege how counsel could have cross-examined the victim more effectively. Therefore, the district court did not err in denying this claim.

(Ex. 33 at 4.) The Nevada Supreme Court's conclusion was not objectively unreasonable.

Counsel did not ask Tippens whether he was attempting to rob Green, but this did not fall outside the wide range of reasonable representation. Tippens admitted to the jury that he was a convicted felon who had served a prison term for robbery. (Ex. 28 (Tr. 27-29, 53-54, 80).) It is clear from the record that counsel's strategy was to focus on the inconsistencies in Tippens' statements rather than his criminal history, which was clearly admitted, to cast doubt on his story. It was not objectively unreasonable for the state courts to conclude that counsel's conduct fell within the wide range of reasonable representation.

---

[8]Ground 4(d) also asserts that counsel failed to investigate, object to unconstitutional jury instructions, and object to motion in limine hearing before a judge he knew had a prior opinion, but these assertions are duplicative of other claims in the petition and are not further discussed here.

14

Green is not entitled to relief on Ground 4(d).

**N. Ground 5(c)**

In Ground 5(c), Green asserts that his due process rights were violated by the introduction of prior bad acts during the State's case in chief. He asserts that the weapon he used in the other cases was a box cutter and that he did not use a box cutter in this case. He further asserts that much of the prior bad act testimony was redundant and only served to inflame the passions of the jury. (ECF No. 8 at 11.)

The Nevada Supreme Court rejected this claim as follows:

> Evidence of prior bad acts may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2). "The trial court's determination to admit or exclude evidence of prior bad acts is a decision within its discretionary authority and is to be given great deference." Braunstein v. State, 118 Nev. 68, 72, 40 P.3d 413, 416 (2002). Such determinations "will not be reversed absent manifest error." Id. A trial court deciding whether to admit evidence of prior bad acts must conduct a hearing outside the presence of the jury. Petrocelli v. State, 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985), modified on other grounds by Sonner v. State, 112 Nev. 1328, 930 P.2d 707 (1996). During the Petrocelli hearing, the district court must determine whether "(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." Tinch v. State, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997).

> Here, the district court conducted a Petrocelli hearing and found that (1) the evidence regarding Green's previous attacks on others using a box knife was relevant to the crime charged because they showed identity and lack of mistake and, along with the instant offense, occurred within a 12-month period in the same general location and under the same basic circumstances, i.e., when "someone is attempting to move Mr. Green from somewhere he shouldn't be;" (2) Green was convicted for the three prior attacks and the five witnesses who testified regarding the events were credible, so the acts were proven by clear and convincing evidence; and (3) the prejudice to Green from admitting the evidence did not substantially outweigh its probative value. We note that the district court instructed the jury regarding the limited use of the prior bad acts evidence before and after such evidence was admitted. See Tavares v. State, 117 Nev. 725, 731-33, 30 P.3d 1128, 1131-33 (2001), modified on other grounds by Mclellan v. State, 124 Nev. ___, 182 P.3d 106 (2008). Based on the foregoing, we conclude that the district court's decision to admit this evidence did not constitute manifest error.

15

(Ex. 12 at 1-3.)[9] The Nevada Supreme Court's decision was not objectively unreasonable.

"Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). The state courts held that the evidence was admissible to show identity and lack of mistake. However, even if the only inference that could be drawn from this evidence was that Green had a propensity to slash at people with box cutters when involved in a confrontation, the Supreme Court has never held that admission of prior bad acts to show propensity constitutes a violation of due process. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) (expressly declining to decide "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *see also Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 864–66 (9th Cir. 2006). Nor has Green identified any Supreme Court law holding that admission of unfairly prejudicial evidence amounts to a due process violation. *See Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).

Green is not entitled to relief on Ground 5(c).

**O. Ground 5(f)**

In Ground 5(f), Green asserts that his due process rights were violated by limitations placed on the evidence he could present regarding Tippens' violent character and criminal history. (ECF No. 8 at 11.) Respondents assert that they have located no ruling that limited the evidence Green could present on this point, and Tippens' criminal history was in fact admitted at trial. This Court's review of the record similarly fails to reveal any trial court rulings limiting such evidence or denying counsel's attempt to introduce this type of evidence. Green fails to clarify or elaborate on this claim in his reply. Green has therefore failed to establish that any limits were placed on the evidence he could introduce about Tippens' criminal history and nature and thus fails to state a due process claim.

---

[9]The citation is to the original page in the document.

1  Green is not entitled to relief on Ground 5(f).

2  **P. Ground 5(g)**

3  In Ground 5(g), Green asserts that the trial court violated his due process rights by

4  ordering him committed without a probable cause hearing and without petitioner present.

5  (ECF No. 8 at 11 & 15.) This claim is largely duplicative of Ground 3(d) and is denied on

6  the same basis.

7  **Q. Ground 6(a)**

8  In Ground 6(a), Green asserts ineffective assistance of counsel based on

9  counsel's "constructive willfulness" in failing to object to the fact that Green's case was

10  assigned to the district court, Department 15, before Green's preliminary hearing. (ECF

11  No. 8 at 13.) As previously discussed, Green has not established that the assignment to

12  the district court for a competency evaluation before his preliminary hearing was

13  improper. Thus, Green cannot show that counsel was deficient in failing to object to the

14  assignment.

15  Green is not entitled to relief on Ground 6(a).

16  **R. Ground 6(b)**

17  In Ground 6(b), Green asserts that counsel failed to obtain or present mitigating

18  evidence related to his defense of self-defense and was ineffective for failing to interview

19  witnesses.[10] (ECF No. 8 at 13.) Other than the testimony of the hotel manager, Brian

20  Cornutte, Green does not identify what additional information should have been obtained

21  or witnesses interviewed and presented. As already discussed, Cornutte's testimony was

22  unnecessary because the evidence he would have provided was presented at trial

23  through a different source. Because Green otherwise does not establish how counsel's

24  performance was deficient and the failure to call Cornutte was not deficient, Green's

25  ineffective assistance of counsel claim based on the failure to obtain or present evidence

26  or witnesses in support of his defense of self-defense fails.

27
_____
[10]The remainder of Ground 6(b) is duplicative of other claims in the petition.

28

Green is not entitled to relief on Ground 6(b).

**S. Unenumerated Grounds**

Green raises several additional unenumerated claims on pages 16 through 18 of the petition. Most of these claims were addressed by the state courts.

First, Green asserts that counsel failed to prepare for trial or pursue pretrial motions or discovery. (ECF No. 8 at 16-17.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to pursue pretrial motions or discovery. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced because he failed to allege what pretrial motions or discovery should have been pursued. Hargrove, 100 Nev. at 502-03, 686 P.2d at 225. Therefore, the district court did not err in denying this claim.

(Ex. 33 at 3.) This conclusion was not objectively unreasonable. Green did not in state court and does not here identify what pretrial motions and discovery should have been pursued other than the testimony of Brian Cornutte. As already discussed, Cornutte's testimony was redundant of testimony presented at trial. Accordingly, Green has failed to demonstrate either deficient performance or prejudice on these grounds.

Second, Green asserts that counsel failed to call any witnesses. (ECF No. 8 at 17.) Again, Green fails to identify whom counsel should have called other than Brian Cornutte. Green fails to establish deficient performance or prejudice on this basis.

Third, Green asserts that, in opening statements, counsel argued that Green and Tippens fought despite the fact Green never said it was a fight. (ECF No. 8 at 17.) But Green's own testimony was that he and Tippens fought after Tippens tried to rob him. (*See* Ex. 4 (Tr. 156).) Green fails to establish prejudice or that counsel fell below the wide range of reasonable representation in this respect.

Fourth, Green asserts that counsel included statements in the Fast Track statement that he knew were false. (ECF No. 18.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that appellate counsel was ineffective for submitting facts in the fast-track statement that were false. Appellant failed to demonstrate that appellate counsel was deficient because appellant failed to allege what facts were false. Therefore, the district court did not err in denying this claim.

(Ex. 33 at 5.) This conclusion was not objectively unreasonable. Green has not identified what statements in the Fast Track statement were false.

Fifth, Green asserts that counsel failed to object to Judge Saragosa appointing Parris as counsel on November 16, 2007, and then presiding over the preliminary hearing on February 21, 2008. (ECF No. 8 at 18.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that trial counsel was ineffective for failing to object to the justice court judge "Saragosa appoint[ing] John Parris on Nov. 16, 2007 and presid[ing] over the preliminary hearing 2/21/2008." Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. Appellant failed to allege specific facts that, if true, entitled him to relief. Id. Therefore, the district court did not err in denying this claim.

(Ex. 33 at 3.) The Nevada Supreme Court's rejection of this claim was not objectively unreasonable. It is difficult to understand what Green's real complaint is. If it is, again, that his case was assigned to the district court before a preliminary hearing, that claim lacks merit as already discussed, *supra*. If it is that counsel failed to object to his own appointment as counsel to Green, this claim is frivolous and lacks merit. The Nevada Supreme Court was not objectively unreasonable in rejecting this claim.

Finally, Green asserts that counsel failed to object to the bad act evidence during trial knowing that the motion in limine was insufficient to preserve the objection. (ECF No. 8 at 18.) The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant claimed that trial counsel failed to make contemporaneous objections at trial to the admission of prior bad act evidence. Appellant fails to demonstrate that counsel was deficient or that he was prejudiced. Appellant failed to demonstrate that trial counsel should have made a contemporaneous objection in order to preserve the objection for appeal. We note that on direct appeal, this court reviewed the district court's decision to admit the evidence under the appropriate standard for an issue preserved by an objection in the district court. . . . Therefore, the district court did not err in denying this claim.

19

(Ex. 33 at 3.) The Nevada Supreme Court's conclusion was not objectively unreasonable. Counsel objected to the evidence by opposing the State's motion in limine. Green has not shown how the Nevada Supreme Court's review of this claim would have been any different had counsel had also made a contemporaneous objection to the prior bad acts evidence as it was admitted. Green fails to establish prejudice or deficient performance.

### T. Claims Raised in Reply

Finally, Green raises new allegations in his reply that were not part of his petition, including in some cases drastically altering the nature of his original claim. Except as otherwise explicitly addressed, the Court need not and does not consider any claims raised for the first time in reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

## IV. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, Green must receive a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See id.*

The Court has considered the issues raised by Green with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny Green a certificate of appealability.

///

**V. CONCLUSION**

In accordance with the foregoing, it is therefore ordered that the petition for writ of habeas corpus in this case (ECF No. 8) is denied on the merits, and this case is therefore dismissed with prejudice.

It is further ordered that Green is denied a certificate of appealability.

It is further ordered that the Clerk of Court shall enter judgment accordingly and close this action.

It is so ordered.


DATED THIS 19th day of November 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE